# O'CONNOR *v.* BETTENDORF. (1)

PATENTS; INTERFERENCE; EVIDENCE; ESTOPPEL.

A letter by a manufacturing company with which the junior party to an interference (involving a draft rigging for railroad cars) was connected, to another company, by which the senior party was employed, to the effect that a sketch or print of a sample car under frame, under construction for a railway company, could not then be sent, as no complete drawings had then been made, was *held* not to be a disclaimer of the invention by the junior party, or to estop him from making claim that he had then conceived the invention, or sufficient to lead the senior party to believe that the field was open for him to proceed to devise an under frame embodying the invention; especially where the company to which the letter was addressed knew that the sample car was being very hastily constructed, and that, under the custom obtaining among manufacturers, complete or final drawings were not made until after tentative drawings had been submitted to the railroad company for approval.

No. 735.  Patent Appeals.  Submitted November 17, 1911.  Decided January 2, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.            *Affirmed.*

The facts are stated in the opinion.

*Messrs. Mundy, Evarts, Adcock, & Clarke* and *Mr. H. M. Low* for the appellant.

*Mr. C. D. Davis* and *Mr. Frank D. Thomason* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal by John F. O'Connor from a decision of the Commissioner of Patents in which priority of invention was awarded William P. Bettendorf.

The invention has to do with draft rigging for railroad cars, and the issue is expressed in the following counts:

"1. A draft and buffing gear, comprising a single draft beam, cheek plates secured to opposite sides of the beam, a drawbar, followers, a cushioning device in connection with the followers, and means connecting the drawbar with the rear follower.

"2. A draft and buffing gear, comprising a single flanged metallic beam, cheek plates secured to opposite sides of the beam, a braw-bar, followers, a cushioning device in connection with the followers, and means connecting the drawbar with the rear follower.

"3. A draft and buffing gear, comprising an I beam with part of its web removed, cheek plates secured to opposite sides of the beam, a drawbar, followers, a cushioning device in connection with the followers, and means connecting the drawbar with the rear follower."

John F. O'Connor is the senior party, having filed his application March 16, 1908, nine or ten days after conceiving the invention, while Bettendorf did not file until May 23, 1908. Each of the tribunals of the Patent Office has reviewed the evidence in detail, and each has reached the conclusion that Betten-

dorf was the prior inventor. The earliest date of conception awarded O'Connor was March 7, 1908. He relies upon the filing of his application to establish reduction to practice. Each of the Patent Office tribunals found a conception of the invention by Bettendorf in 1906, when a sample car known as the "Wabash" car, and, according to those tribunals, embodying every element of the invention, was made at the factory of the Bettendorf Axle Company. Each of those tribunals has further found that in January, 1908, a date prior to the entry of O'Connor into the field, negotiations were under way with the Chicago, Milwaukee, & St. Paul Railway, looking to the manufacture for that company, by the Bettendorf Company, of cars embodying the invention in issue, and that another sample car, known as the "Milwaukee" car and embodying the invention, was thereupon constructed and, on March 6, 1908, inspected by certain named officials of said railway company. At this inspection two officials of the Chicago, Burlington, & Quincy Railway were present. We shall not consume time with a useless review of the evidence which we think not only warranted, but compelled, the conclusions reached by the Patent Office.

O'Connor insists, however, that, even assuming the correctness of the decision of the Patent Office on the question of priority, the patent should nevertheless be issued to him. This contention grows out of an incident which occurred just prior to O'Connor's conception of the invention. At that time O'Connor was employed by the W. H. Miner Company, of Chicago, to whom he assigned his invention. That company was engaged in the manufacture of draft rigging of various kinds, and had done some business with the Bettendorf Company. Understanding that the Miner friction draft gear was to be used by the Bettendorf Company in carrying out its contract with the Chicago, Milwaukee, & St. Paul Railway Company, the Miner Company sought from the Bettendorf Company drawings of the car under frame. Of course the Miner friction draft gear did not contain the invention in issue. On March 7, 1908, the following communication was

sent the Miner Company by the Bettendorf people: "Confirming our 'phone conversation of this afternoon, we are sorry to advise you that our design of the draft gear end of the center sill on the Milwaukee stock car under frame is in such a stage that we cannot send you a sketch or print of the same. The fact is that as yet, no complete drawings have been made." O'Connor contends that the sending of this communication, under the circumstances disclosed, estopped Bettendorf from making claim to the invention. This communication, he contends, led him to believe that the field was open, and he thereupon, in good faith, proceeded to devise an under frame embodying the invention. Assuming that the relations of the parties were such as to permit O'Connor to take advantage of any lack of good faith on the part of Bettendorf, we agree with the Patent Office that the above communication is not reasonably susceptible of the construction placed upon it by O'Connor. It was perfectly well known by the Miner company that this "Milwaukee" sample car was being very hastily constructed, and that, under the custom obtaining among manufacturers, complete or final drawings were not made until after tentative drawings had been submitted to the railway company for approval. Upon the completion of this sample car, slight modifications or changes might have been required by the railway company. These facts must be kept in mind while reading the letter under consideration. In that letter the Miner company was simply told that a sketch or print of the sample car under frame could not then be sent; that no complete drawings had then been made. It was an entirely unwarranted inference on the part of the Miner company that this sample car under frame did not contain novel and patentable features, or that Bettendorf was not then engaged in devising such features. Certain it is that this letter cannot be construed as a disclaimer of the invention.

The decision of the Commissioner is affirmed.    *Affirmed.*